UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **TOM RICKHOFF,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **VS.** | ) | **Civil Action No.  SA-10-CA-140-XR** |
| | ) | |
| **SEANA WILLING, ET AL.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |
| | ) | |

**ORDER ON MOTION FOR SUMMARY JUDGMENT**

Plaintiff Tom Rickhoff is a Bexar County Probate Judge running for re-election in November 2010.  On February 17, he filed this lawsuit against various members of the Texas State Commission on Judicial Conduct ("the Commission") in their official capacities, alleging that the Commission's investigation into a complaint filed by his opponent, Barbara Scharf-Zeldes, concerning a June 6, 2009 campaign letter sent by Rickhoff violates his rights to free speech and due process.  Rickhoff's June 6 campaign letter generally compared his experience to that of his opponent, and contained the statement that "[w]hen pressed by the *Express-News* editors, my former and future opponent [Scharf-Zeldes] could not cite one jury trial in which she ever represented a client."  Compl. Ex. 3. Scharf-Zeldes asserted in her complaint that this statement was a violation of Canon 5(l)(ii) of the Texas Code of Judicial Conduct.[1]  Scharf-Zeldes also complained that other conduct related to her cases pending before Judge Rickhoff violated the Code.   According to the evidence, the Commission's investigative staff reviewed the complaint and determined that it had jurisdiction over Judge Rickhoff and that the allegations, if true, could possibly amount to a canon and/or constitutional violation.  The investigative staff created an investigation plan and contacted two

---

[1] Canon 5(1)(ii) provides that "[a] judge or judicial candidate shall not: (ii) knowingly or recklessly misrepresent the identity, qualifications, present position, or other fact concerning the candidate or an opponent."

witnesses to obtain information.  The staff determined that the non-Canon 5(1)(ii) allegations could not be resolved without a full investigation and also determined that legal research might be needed with respect to the alleged Canon 5(1)(ii) violation.  The investigative staff therefore recommended transfer to the Commission's legal staff, and the legal staff researched the issue of the constitutionality of Canon 5(1)(ii).  Legal staff found no authority that Canon 5(1)(ii) posed a First Amendment problem and chose to continue the investigation.  Because the witnesses relevant to the Canon 5(1)(ii) allegation were news media, investigative staff decided not to contact them in order to maintain confidentiality, and decided to send Judge Rickhoff an informal letter of inquiry asking him to respond to the allegation.

The Commission informed Rickhoff by letter on February 4, 2010 about Scharf-Zeldes's complaint, and asked him to respond to a Questionnaire concerning the complaint.  Most of the questions concerned Rickhoff's conduct relating to Scharf-Zeldes's cases, but Question 8 of the Questionnaire asked Rickhoff to respond specifically to the claim that his campaign-letter statement violated Canon 5(l)(ii) (misidentified as Canon 5(l)(i)).  Rickhoff then filed this lawsuit, alleging that his First Amendment and Due Process rights were being violated by the Commission's actions in investigating and enforcing Canon 5(1)(ii).  After the Commission learned that Rickhoff had made the allegations public through the filing of this lawsuit, its investigative staff contacted the relevant witnesses, including Scharf-Zeldes, and asked them about their recollection of the press conference.  Judge Rickhoff also responded to the Questionnaire, asserting a First Amendment objection and also responding that his statement was true.  The Complaint against Judge Rickhoff was presented to the Commission at its April 16, 2010 meeting, and the Commission voted to dismiss the portion of the complaint related to the Canon 5(1)(ii) allegation because the investigation revealed that Judge Rickhoff had not violated the Canon.  On May 4, 2010, the Commission offered Judge Rickhoff a tentative sanction with regard to the other allegations.  Judge Rickhoff has not accepted the tentative sanction, and is scheduled to appear before the Commission sometime in October.

The Commission now moves for summary judgment on all of Plaintiff's claims, as well as the claims of intervenor J.D. Pauerstein.  The Commission asserts that *Younger* abstention requires the Court to avoid ruling on the constitutional issues presented, that Plaintiff's First Amendment claims are moot and lack Article III justiciability, that Canon 5(1)(ii) is facially constitutional, that it was constitutionally applied, and that Plaintiff received all process that was due.  The Court agrees

with the Commission that *Younger* abstention is appropriate and dismisses the case.[2]

## Analysis

*Younger* abstention is required when (1) there is an ongoing state proceeding that is "judicial in nature," (2) the state has an important interest in regulating the subject matter of the claim, and (3) there is an adequate opportunity in the state proceedings to raise constitutional challenges. *Wightman v. Texas Supreme Court*, 84 F.3d 188, 189 (5th Cir. 1996). The Commission asserts that the Commission proceeding is a "state judicial proceeding" that implicates an important state interest for purposes of *Younger* and that Plaintiff has an adequate opportunity to raise his federal constitutional claims in his Commission proceedings. The Commission argues that only an opportunity is required; Plaintiff need not have actually asserted or pursued the constitutional claims in the administrative proceeding. The Commission asserts that, "[h]ad the Commission chosen to pursue the Scharf-Zeldes Complaint to its ultimate conclusion, in fact Plaintiff would have been able to appeal to the Texas Supreme Court and could raise these issues to a meaningful audience." The Commission therefore contends that all three requirements for abstention are present.[3]

Rickhoff contends that the state proceeding is not "ongoing" because the Commission has officially dismissed its case against Rickhoff with respect to the Canon 5(1)(ii) allegation. But even if there is an ongoing proceeding, Rickhoff argues, the Commission has no competence to judge constitutional issues, and Rickhoff has no opportunity for meaningful appellate review because only the most severe sanctions may be appealed to the Texas Supreme Court. Further, Rickhoff argues, any appeal to the Texas Supreme Court would not be "meaningful" because the Court itself promulgates the Code of Judicial Conduct, and thus cannot conduct an independent, unbiased review of Rickhoff's challenge.

---

[2] The Court further concludes that *Younger* abstention should apply to Pauerstein's claims in intervention because Pauerstein is intervening in a case that was already subject to abstention, and the addition of his claims, which are intertwined with and to a large extent derivative of Rickhoff's, should not permit this Court to exercise jurisdiction whether it otherwise could not.

[3] A federal court need not decide whether the parties present an Article III case or controversy before abstaining under *Younger v. Harris*. *Sinochem Int'l Co. v. Malaysia Int'l*, 549 U.S. 422, 431 (2007).

<u>Whether there is an ongoing state proceeding that is judicial in nature?</u>

*Younger* abstention applies to administrative proceedings that are "judicial in nature." *Ohio Civil Rights Comm'n v. Dayton Christian Schools, Inc*., 477 U.S. 619 (1986)(finding that *Younger* abstention was appropriate when matter was before a state commission charged with hearing gender discrimination claims). This includes civil enforcement proceedings and "civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions." *New Orleans Public Service, Inc. v. Council of City of New Orleans* (*"NOPSI"*), 491 U.S. 350, 368 (1989) (citing *Juidice v. Vail*, 430 U.S. 327, 336, n.12 (1977) (civil contempt order); *Pennzoil Co. v. Texaco Inc*., 481 U.S. 1, 13 (1987) (requirement for the posting of bond pending appeal)). The Supreme Court has held that a proceeding is "judicial in nature" if it investigates, declares, and enforces liabilities as they stand on past or present facts and under law supposed already to exist. *NOPSI*, 491 U.S. at 370-71 (citing *Prentis v. Atlantic Coast Line Co.*, 211 U.S. 210 (1908)); *see also Dist. of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 486 (1983).

The Supreme Court has held that state bar disciplinary proceedings can be considered "judicial in nature." *Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423 (1982).[4] Further, a number of courts of appeals have applied *Younger* to judicial oversight and disciplinary proceedings. *See, e.g.*, *Squire v. Coughlan*, 469 F.3d 551, 556 (6th Cir. 2006) ("Such investigations are an adjudicative, rather than a legislative, function."); *Spargo v. N.Y. State Comm'n on Judicial Conduct*, 351 F.3d 365 (2d Cir. 2003); *Butler v. Alabama Judicial Inquiry Comm'n*, 261 F.3d 1154 (11th Cir. 2001); *Pincham v. Ill. Judicial Inquiry Bc.*, 872 F.2d 1341 (7th Cir. 1989).

The Texas Review Tribunal has held that judicial conduct proceedings "are neither criminal nor regulatory, but rather are civil in nature." *In re Canales*, 113 S.W.3d 56, 64 (Tex. Rev. Trib. 2003).[5] It has also stated that "[i]n general, judicial discipline proceedings have 'four important

---

[4] In *Middlesex*, the New Jersey Supreme Court expressly regarded the disciplinary hearings as judicial proceedings. *Id.* at 433.

[5] The Supreme Court noted in *Middlesex* that "whether the proceeding 'is labeled civil, quasi-criminal, or criminal in nature,' the salient fact is whether federal-court interference would unduly interfere with the legitimate activities of the state." *Middlesex*, 457 U.S. at 433 n.12.

objectives: to deter injudicious conduct; to provide a means by which judges can be disciplined in appropriate cases; to vindicate by an independent report a judge who has been unfairly criticized; and, most important of all, to enable aggrieved litigants or others to air their complaints.'" *In re Rose*, 144 S.W.3d 661, 670 (Tex. Rev. Trib. 2004). The Texas Constitution provides that "[t]he Supreme Court shall by rule provide for the procedure before the Commission, Masters, review tribunal, and the Supreme Court." TEX. CONST. art. V, § 1-a(11). The Court has done so by promulgating the Texas Rules for Removal or Retirement of Judges. "To the extent that they do not conflict with the Rules for Removal or Retirement of Judges, the civil rules of procedure," including the appellate rules, govern judicial conduct proceedings. *In re Rose*, 144 S.W.3d 661, 676 (Tex. Rev. Trib. 2004). The Court finds that Commission proceedings are judicial in nature.

To satisfy *Younger*, the proceedings must also be "ongoing." The relevant inquiry is whether the state proceeding was pending at the time the federal action was instituted. *See Pennzoil v. Texaco*, 481 U.S. 1, 17 (1987) (considering application of *Younger* based on the situation that existed on the day the case was filed in federal court); *Tex. Ass'n of Business v. Earle*, 388 F.3d 515, 518 (5th Cir. 2004) ("[F]ederal courts must refrain from considering requests for injunctive relief based upon constitutional challenges to state criminal proceedings pending *at the time the federal action is instituted*.") (emphasis added). In *Middlesex*, based on state law, the Supreme Court found that the judicial nature of the proceeding began with the filing of a complaint. *Middlesex*, 457 U.S. at 433. The Sixth Circuit has also found, based on state law, that an attorney discipline proceeding began with the filing of the grievance for purposes of *Younger* abstention. *O'Neill v. Coughlan*, 511 F.3d 638, 643-44 (6th Cir. 2008) (the filing of a grievance is the beginning of the judicial process). Though the conclusions in *Middlesex* and *O'Neill* were based on express statements made in state court decisions, other courts have reached similar conclusions even absent such express state court holdings. *See Hirsh v. Justices of the Supreme Court of California*, 67 F.3d 708, 712 (9th Cir.1995) (disciplinary proceedings were ongoing after attorneys received notices to show cause, which commenced disciplinary proceeding); *Mason v. Departmental Disciplinary Comm*., 894 F.2d 512 (2d Cir. 1990) (*Younger* abstention applied when attorney filed federal suit after the attorney discipline committee had sent him a letter informing him of its investigation and asking him to respond).

In *Hensler v. District Four Grievance Committee of the State Bar of Texas*, 790 F.2d 390

5

(5th Cir. 1986), the Fifth Circuit held that *Younger* abstention was proper when the federal plaintiff filed suit after being notified by the State Bar Grievance Committee of the complaint.  The Court noted that various clients filed grievances against Hensler, an attorney, and "[t]he grievance committee began its routine investigation into the allegations." *Id.* at 391.  In response, Hensler filed suit in federal court seeking injunctive relief to prevent the investigation.  *Id.*  The Court noted that, upon receipt of an allegation of attorney misconduct, the committee must determine whether the allegation, if proven, would be grounds for attorney discipline and, if the committee determines that the allegation constitutes a complaint, it must notify the accused attorney.  *Id.*  "It was the noticing of these complaints which precipitated the instant request for injunctive relief." *Id.*  Thus, the state proceeding was ongoing for purposes of *Younger* after the attorney was notified of the complaints and asked to respond. Similarly, at the time Rickhoff filed his Complaint in this Court seeking declaratory and injunctive relief, the Commission proceeding was ongoing.  Thus, the first *Younger* prong is satisfied.

<u>Whether the proceedings implicate important state interests?</u>

Rickhoff does not dispute that the second prong is satisfied.  The purpose of judicial conduct proceedings before the Commission is to "maintain, if not enhance, the honor and dignity of the judiciary of the entire State of Texas and to uphold the administration of justice for the benefit of all its citizens." *In re Canales*, 113 S.W.3d at 64.  Courts routinely state that judicial oversight proceedings implicate important state interests. *See, e.g.*, *Norwood v. Dickey*, 409 F.3d 901, 903 (8th Cir. 2005) (the quality of the judiciary is an important state interest); *Spargo*, 351 F.3d at 75 (noting that judicial disciplinary proceeding "undeniably implicates a vital state interest," and "few interests can be considered more central that a state's interest in regulating its own judicial system"); *see also Pennzoil*, 481 U.S. at 12-13 ("This Court repeatedly has recognized that the States have important interests in administering certain aspects of their judicial systems.").  When important state interests are involved, the federal courts must be particularly sensitive to interfering with the legitimate activities of the state.

<u>Whether Rickhoff would have an adequate opportunity to raise his constitutional claims?</u>

Rickhoff asserts that there is no opportunity to raise constitutional challenges in proceedings before the Commission. Where vital state interests are involved, a federal court should refrain from enjoining an on-going state proceeding unless state law clearly bars the interposition of

constitutional claims, or some extraordinary circumstance exists requiring equitable relief. *Middlesex*, 457 U.S. at 432. The plaintiff bears the burden of showing that state procedural law bars presentation of his claims. *Pennzoil*, 481 U.S. at 14 (citing *Younger*, 401 U.S. at 45 ("'The accused should first set up and rely upon his defense in the state courts, even though this involves a challenge of the validity of some statute, unless it plainly appears that this course would not afford adequate protection.'")); *Butler v. Alabama Judicial Inquiry Comm'n*, 245 F.3d 1257, 1262 (11th Cir. 2001).

Rickhoff argues that the Commission cannot adequately consider constitutional claims because not all of its members are lawyers and it is unclear whether the Commission has jurisdiction to consider constitutional challenges. The fact that not all Commission members are lawyers, however, is not dispositive. The Supreme Court in *Middlesex* noted that a majority of the Ethics Commission members were lawyers. *Middlesex*, 457 U.S. at 435 ("Respondent Hinds points to nothing existing at the time the complaint was brought by the local Committee to indicate that the members of the Ethics Committee, the majority of whom are lawyers, would have refused to consider a claim that the rules which they were enforcing violated federal constitutional guarantees."). Similarly, the Commission's thirteen members include two lawyers and six judges. Like the non-court commission in *Civil Rights Commission v. Dayton Christian Schools*, the Court finds it unlikely that the Commission could not construe and apply its statutory mandates and procedures in light of federal constitutional principles. *Ohio Civil Rights Commission*, 477 U.S. at 629; *see also Butler*, 245 F.3d at 1263 (noting that judge did not demonstrate that the commission could not have considered constitutional challenges to the rules they were charged with enforcing). Certainly, Rickhoff has pointed to nothing that clearly bars such consideration. Rather, Texas case law indicates that the Commission could consider constitutional challenges to the canons and to its own procedures. *See, e.g.*, *In re Rose*, 144 S.W.3d 661 (Tex. Rev. Trib. 2004) (noting that the Commission considered respondent judge's due process challenges to the proceedings raised in a motion for reconsideration/rehearing).[6]

In addition, judges may seek review by a Special Court of Review (for informal proceedings)

---

[6] The evidence in this case indicates that the Commission's legal staff researched the issue of whether Canon 5(1)(ii) was constitutional, and there is no indication that the Commission itself could not consider Rickhoff's claims.

or a Review Tribunal (for formal proceedings), both of which are composed of judges and can and do consider constitutional challenges.[7]  Further, judges may appeal decisions of the Review Tribunal to the Texas Supreme Court (there is no appeal from a decision of the Special Court of Review).[8]  Thus, the process affords several opportunities to fully and fairly litigate constitutional claims, and thus satisfies *Younger*.  *See Wightman v. Tex. Supreme Court*, 84 F.3d 188, 190 (5th Cir. 1996) (where state disciplinary proceedings allow an attorney to make constitutional objections to the proceedings at multiple stages, the proceedings provide an adequate opportunity to raise constitutional challenges).

Nevertheless, Rickhoff contends that Commission proceedings lack adequate opportunity to raise constitutional claims because review by the Texas Supreme Court is only available if the respondent judge is sanctioned with removal or retirement, and is thus not available for other sanctions.  This argument is unavailing, however, as review by the Texas Supreme Court is not required.  *Younger* abstention principles apply if the constitutional claims can be considered by a "competent state tribunal"; review by the Texas Supreme Court is sufficient, but not necessary to satisfy *Younger*.  The Supreme Court has never held that an adequate opportunity to raise constitutional concerns is presented only when such state supreme court review is available. *Younger* requires only that "in the course of the state proceedings" the federal plaintiff would have a full and fair opportunity to litigate his constitutional claims.  In disciplinary proceedings before the Commission, judges may raise constitutional claims before the Commission, the Special Court of Review or the Review Tribunal, and, in certain circumstances, the Texas Supreme Court.  This

---

[7] *See In re Hecht*, 213 S.W.3d 547 (Tex. Spec. Ct. Rev. 2006) (noting that, had it found Justice Hecht to have violated the canon, it would have considered his constitutional claims); *In re Rose*, 144 S.W.3d 661 (Tex. Rev. Trib. 2004) (due process challenge was argued before and considered by the Commission, as well as on review by Review Tribunal); *In re Bartie*, 138 S.W.3d 81 (Tex. Rev. Trib. 2004) (challenge that Commission exceeded its authority); *In re Davis*, 82 S.W.3d 140 (Tex. Spec. Ct. Rev. 2002) (First Amendment challenge).  Thus, judicial review of constitutional claims is available in Commission proceedings.

[8] Rickhoff further complains that review by the Texas Supreme Court would not be "meaningful" because the Texas Supreme Court promulgates the Canons and thus cannot be charged with considering constitutional challenges to its own Code of Judicial Conduct.  However, the Texas Supreme Court is fully capable of considering the constitutionality of the Code of Judicial Conduct. *Butler*, 245 F.3d at 1262 n.4 (rejecting a similar argument).

is sufficient to satisfy *Younger*, even if Texas Supreme Court review is only available for the most severe sanctions.

Rickhoff also argues that *Younger* no longer applies because on September 21, the Commission provided Rickhoff with a formal notice that it had dismissed the portion of Scharf-Zeldes's complaint alleging a Canon 5(1)(ii) violation, and thus there is no ongoing proceeding.[9] However, "[w]hether the state action is still pending does not matter for [*Younger* abstention] purposes." *Green v. Benden*, 281 F.3d 661, 666 (7th Cir. 2002).  Thus, the fact that consideration of the constitutional claim may no longer be available in the state court proceeding is not dispositive, so long as the proceeding was ongoing when the federal lawsuit was filed and the federal plaintiff had an *opportunity* to present his constitutional claims.

In *Juidice v. Vail*, 430 U.S. 327, 337 (1975), the Supreme Court made clear that no more than an opportunity to raise constitutional claims is required by *Younger*: "There is no support in *Gerstein* or in our other cases for the District Court's belief that the state courts must have an actual hearing (to which a recalcitrant defendant would presumably be brought by force) in order for *Younger* and *Huffman* to apply. Appellees need be accorded only an opportunity to fairly pursue their constitutional claims in the ongoing state proceedings, and their failure to avail themselves of such opportunities does not mean that the state procedures were inadequate."  *Id.* at 337 (citation omitted).  In *Juidice*, the federal plaintiffs were subject to contempt proceedings, and the Supreme Court noted that they should have raised their constitutional claims during those proceedings, preferably in response to the show cause order.  Instead, the federal plaintiffs did not respond to the district court's show cause order, were held in contempt, and then pursued a federal action to have the contempt procedures declared unconstitutional after they were jailed.  Where the federal plaintiffs had an opportunity to present their constitutional claims in the underlying contempt proceedings, but did not avail themselves of that opportunity, *Younger* principles still applied.  The Supreme Court has reaffirmed that "when a litigant has not attempted to present his federal claims in related state-court proceedings, a federal court should assume that state procedures will afford an adequate remedy, in the absence of unambiguous authority to the contrary."  *Pennzoil*, 481 U.S. at

---

[9] It is undisputed that the disciplinary proceedings as a whole are ongoing, as Judge Rickhoff has not accepted the tentative sanction.

9

15.   Here, Rickhoff has not fulfilled his burden of demonstrating that he had no opportunity to present his constitutional claims before the Commission.  In his response to the Questionnaire, Rickhoff wrote

> I disagree with the Commission's assumption that it can investigate any statements I have made regarding the Complainant's qualifications for judicial office.  Such campaign speech is accorded the full protection of the First Amendment of the United States Constitution.  The voters of Bexar County have an absolute right to know about a judicial candidate's qualifications for office including, importantly, the candidate's trial experience.  I refer the Commission to my Original Complaint for a more detailed discussion on this matter.  A courtesy copy of the complaint has already been provided to Mr. Warneke, the Commission's general counsel.
>
>     Moreover, the statement at issue is correct and was neither a knowing or reckless misrepresentation under Canon 5(1)(ii).

However, Rickhoff did not attempt to raise his constitutional claims in any direct manner in the Commission proceedings.  Rickhoff has not even attempted to demonstrate that he would not have been able to do so, such as by filing a motion to dismiss the proceedings.  He makes only the conclusory assertion that "it is unlikely that the Commission even has jurisdiction to rule on questions of constitutional law" because it is not expressly granted such authority.  This fails to satisfy *Younger*'s requirement that the federal plaintiff show that state procedures clearly bar consideration of the constitutional claims.  "A party may not invoke the aid of a federal court, alleging that his state remedies are inadequate, without having first tested the sufficiency of those remedies and having found them to be wanting."  *Duke v. Texas*, 477 F.2d 244, 252 (5th Cir. 1973)

Neither is it dispositive that the Canon 5(1)(ii) issue was disposed of on the Commission's conclusion that Rickhoff did not violate Canon 5(1)(ii).  *Spargo*, 351 F.3d at 79 ("[T]his conclusion is not altered by the fact that Spargo's disciplinary charges may be dismissed on other grounds, such as for lack of substantial evidence . . . .  The relevant question under *Younger* is 'whether the state's procedural remedies *could* provide the relief sought [not] ... whether the state will provide' the constitutional ruling which the plaintiff seeks. *Kirschner* [*v. Klemons*], 225 F.3d 227, 234-35 [(2d Cir. 2000)] (emphasis added) (noting that 'it [was] irrelevant to the application of *Younger* that [plaintiff's] constitutional claims ... [had] not [been] addressed by the Appellate Division' where the Appellate Division found for plaintiff on alternate grounds)").

Further, Rickhoff has not demonstrated that he has exhausted all avenues of review.  Since

the related proceedings are pending against Rickhoff before the Commission, it is possible that Rickhoff may still raise his challenges there or before the Special Court of Review.  If not, he may have a right to judicial review in state court.  Texas law generally holds that there is no right to judicial review of an administrative order unless a statute provides a right, except that an "inherent right of appeal from an administrative body" exists when the administrative action complained of violates some provision of the state or federal constitution.  *City of Amarillo v. Hancock*, 239 S.W.2d 788 (Tex. 1951); see also *Continental Cas. Ins. Co. v. Functional Restoration Assocs.*, 19 S.W.3d 393, 397 (Tex. 2000) (recognizing an inherent right to judicial review under due process).  In *Smith v. State Comm'n on Judicial Conduct*, No. 03-04-00376-CV, 2005 WL 3331887 (Tex. App.–Austin 2005, pet. denied), the court of appeals concluded that a person who filed a grievance with the Commission that was later dismissed might be entitled to judicial review of that decision if he could show that the Commission's decision violated his constitutional rights.  Rickhoff has not shown that he would have no inherent right of appeal in the state court system based on the Commission's alleged violation of his constitutional rights.

Though at this point in time it appears that this Court's deciding the constitutional issues would interfere only minimally with the proceedings before the Commission, it is clear that, had the Court enjoined the investigation and other proceedings before the Commission concerning the Canon 5(1)(ii) allegations at the time suit was filed, it would have been directly interfering with the state proceedings in contravention of the comity principles of *Younger*.[10]  And Rickhoff's failure to attempt to raise his constitutional challenges before the Commission preclude his assertion that such proceedings are or would have been inadequate to do so.  Because Rickhoff has not shown that he lacked (or still lacks) the opportunity to pursue his constitutional claims in the Commission proceedings or that he has pursued all avenues of review thereof, the principles underlying *Younger* apply to his claims.  "[A]ny uncertainties as to the scope of state proceedings or the availability of state remedies are generally resolved in favor of abstention."  *Spargo*, 351 F.3d at 78 (citing *Butler v. Ala. Judicial Inquiry Comm'n*, 261 F.3d 1154, 1159 (11th Cir.2001) (concluding that abstention

---

[10] "It is immaterial that [the federal plaintiff does] not seek to enjoin the entire state court proceedings but merely to control the decision of one matter therein."  *Greene v. Harris County*, 166 Fed. App'x 736, 737 (5th Cir. 2006).

was required even without authoritative guidance as to whether plaintiff could raise his First Amendment claims in the pending state judicial discipline proceeding)).

Last, Rickhoff has not asserted that any of the *Younger* exceptions applies. Courts have held that a "chilling effect" on the exercise of constitutional rights is an insufficient basis to avoid the holding of *Younger*. *Crenshaw v. Supreme Court of Indiana*, 170 F.3d 725, 729 (7th Cir. 1999) ("The possible unconstitutionality of a rule does not justify an injunction against good-faith efforts to enforce that rule."); *Wightman*, 84 F.3d at 191 (even a facial challenge does not justify abstention absent an allegation of bad faith); *see also Ohio Civil Rights Comm'n*, 477 U.S. at 628 (holding that, even though religious school argued that the mere exercise of jurisdiction over it by the commission violated the First Amendment, that did not automatically vitiate the adequacy of commission procedures for purposes of *Younger*, and the commission violated no constitutional rights by merely investigating the claims).

### Conclusion

The Commission's motion for summary judgment is GRANTED IN PART as to *Younger* abstention and dismissed as moot in all other respects. The Court finds that *Younger* abstention principles apply, and therefore DISMISSES this case.

SIGNED this 14th day of October, 2010.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE